**HALLETT et al., Appellants,**

v.

**STOW BOARD OF EDUCATION et al., Appellees.**

[Cite as *Hallett v. Stow Bd. of Edn.* (1993), 89 Ohio App.3d 309.]

Court of Appeals of Ohio,
Summit County.

No. 15846.

Decided Aug. 25, 1993.

*Dennis R. Lansdowne* and *John A. Lancione,* for appellants.

*Jeffrey Lindenberger,* for appellees.

DICKINSON, Judge.

Plaintiff Nancy Hallett was injured on September 29, 1989, when she stepped in a hole and fell while attending a football game at the Stow–Munroe Falls High School Stadium. Mrs. Hallett and her husband, Doran Hallett, filed a complaint in the Summit County Court of Common Pleas against the Stow Board of Education, Stow City Schools, Stow High School, and John Doe. They alleged that the hole into which Mrs. Hallett had stepped was negligently created and allowed to exist by defendants. Defendants moved for and were granted summary judgment dismissing plaintiffs' claims and plaintiffs have appealed to

this court. They have assigned two errors: (1) the trial court incorrectly concluded that defendants were immune from plaintiffs' claims pursuant to R.C. Chapter 2744; and (2) the trial court incorrectly concluded that there were no disputed issues of material fact and that defendants were entitled to judgment as a matter of law. Plaintiffs' assignments of error are sustained and this matter is reversed and remanded for further proceedings consistent with this opinion.

## I

The Stow–Munroe Falls High School Stadium was built during 1986 and was first used during the 1987 high school football season. There are hills that run the length of both sides of the football field and, in turn, there are bleachers that run part of the length of those hills. The incline of the bleachers and the incline of the hillsides are equal and, accordingly, the end of each bleacher row is only slightly elevated above the ground at the end of that row. People regularly watch football games from the parts of the hillsides at the ends of the bleachers.

Mr. and Mrs. Hallett watched the September 29, 1989 football game from the bleachers on the east side of the stadium. They had entered the bleachers by using a stairway designed to provide access and were seated at the southern end of a row immediately adjacent to a double railing that ran along the end of the bleachers. Near the close of the third quarter of the game, the Halletts decided to leave. By that time, other people were seated around them and, rather than following the row in which they were seated back to the stairs, they exited by climbing between the double railing onto the adjacent hillside. As they walked down the hillside, Mrs. Hallett stepped in a hole, fell, and broke her left leg.

The Halletts brought this action in the court of common pleas, claiming that Mrs. Hallett suffered permanent injuries as a result of her fall and that Mr. Hallett had suffered a loss of his wife's consortium. The trial court granted summary judgment to defendants and plaintiffs appealed to this court.

## II

### A

Plaintiffs' first assignment of error is that the trial court incorrectly concluded that defendants were immune from plaintiffs' claims pursuant to R.C. Chapter 2744. By R.C. Chapter 2744, the Ohio legislature has attempted to establish the perimeters of the doctrine of sovereign immunity for political subdivisions, including school districts.

R.C. 2744.02(A) provides, as a general rule, that political subdivisions are not liable in damages for, among other things, injuries to persons. R.C. 2744.02(B),

however, then creates a number of exceptions to that general rule of nonliability. Among those exceptions are two applicable to this case.

The first applicable exception is found in R.C. 2744.02(B)(2). That section provides that political subdivisions are liable to people injured "by the negligent performance of acts by [the subdivisions'] employees with respect to proprietary functions of the political subdivisions." Among proprietary functions listed in R.C. 2744.01(G)(2)(e) is "operation and control of a public stadium." The general rule of nonliability, therefore, does not apply to this case.

The second applicable exception is found in R.C. 2744.02(B)(4). That section provides that political subdivisions are not immune from liability to persons injured "by the negligence of their employees that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." Pursuant to R.C. 2744.01(C)(2)(c), "the provision of a system of public education" is a governmental function. Inasmuch as the football stadium in which Mrs. Hallett was injured is located on the grounds of the Stow–Munroe Falls High School, R.C. 2744.02(B)(4) also removes this case from the general rule of nonliability.

This, however, is not the end of the analysis. The exceptions to nonliability in R.C. 2744.02(B) are themselves subject to exceptions listed in R.C. 2744.03. That section lists a number of "defenses or immunities" to the liability permitted by R.C. 2744.02(B). Among those are two that the trial court found applicable to this case.

The first exception contained in R.C. 2744.03 that the trial court found applicable to this case is subpart (A)(3):

"The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

The second exception the trial court found applicable is subpart (A)(5):

"The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

Based on these two exceptions, the trial court concluded that defendants were free from liability for plaintiffs' claims:

"The design, construction and maintenance of the Stadium and the failure to warn of a condition on a grassy hillside are covered by the terms of section (A)(5). This includes all matters relating to the condition of the hillside and any failure on the part of the Board or the School to repair the [hole].

"Similarly, as provided in R.C. 2744.03(A)(3), immunity is available to the Defendants 'with respect to policy-making, planning, or enforcement powers' within discretion of its employees."

■ The structure of R.C. Chapter 2744 implies that the legislature did not intend to relieve public entities from liability for all negligent actions of their employees. The issue presented, however, is "[w]hat are governmental agencies, the general public, and now the courts to make of a section of the Ohio Revised Code that first says 'you're not liable,' then says 'you are liable' and then says 'you're not.'" *Stuckey v. Lawrence Twp. Bd. of Trustees* (Aug. 24, 1992), Stark App. No. 8806, unreported, 1992 WL 214485 (Milligan, J., dissenting). The one thing that is clear is that the exceptions to liability found in R.C. 2744.03 must be read more narrowly than the exceptions to nonliability found in R.C. 2744.02(B) in order for the structure chosen by the legislature to make sense.

■ There was evidence before the trial court that defendants' maintenance employees removed litter from the hillside where Mrs. Hallett fell after every varsity event that took place at the stadium and that, when they did so, they were instructed to visually inspect the premises for hazards. Deposition of Donald Wilcox at 11 and 33. Further, there was evidence in the form of testimony by the maintenance supervisor that if a hole the size of the one stepped in by Mrs. Hallett were discovered, it would be filled because it would be considered dangerous. *Id.* at 22. Finally, there was evidence that the area of the hillside where the hole was located appeared as "it normally does as it's existed for several years." *Id.* at 28.

Accordingly, there was evidence before the trial court from which it could be concluded that Mrs. Hallett was injured because an employee or employees of defendants' maintenance department did not properly carry out the duties that had been assigned to them. This case does not involve a situation in which a plaintiff has alleged negligence in a decision about "how many firetrucks respond to an alarm, how many officers with how much training are assigned to a neighborhood, [or the] snowplowing equipment and personnel on the job during a snowstorm * * *." *Vallish v. Copley Bd. of Edn.* (Feb. 3, 1993), Summit App. No. 15664, unreported, at 6, 1993 WL 27494 (Cook, J., dissenting). Nor are we faced with a situation in which the political subdivision made a policy decision not to maintain the area where an injury later occurred. We express no opinion regarding whether R.C. 2744.03 would relieve a political subdivision from liability

under any of those scenarios. In our view, however, neither R.C. 2744.03(A)(3), with its emphasis on "discretion," nor R.C. 2744.03(A)(5), with its emphasis on "judgment or discretion," relieves a political subdivision of the type of negligence alleged in this case.

In *Vallish v. Copley Bd. of Edn.* (Feb. 3, 1993), Summit App. No. 15664, unreported, 1993 WL 27494, a panel of this court held that R.C. 2744.03(A)(5) protected a school district from liability for negligently failing to maintain a sidewalk and negligently failing to warn of the dangerous condition that resulted from that failure to maintain. We hold today that, at least under the circumstances that were presented in this case, political subdivisions are not free from liability for negligently failing to repair or warn of a dangerous hole in an area frequented by invitees. To the extent that the *Vallish* decision holds otherwise, it is overruled. Plaintiffs' first assignment of error is sustained.

## B

■ Plaintiffs' second assignment of error is that the trial court incorrectly concluded that there were no disputed issues of material fact and that defendants were entitled to judgment as a matter of law. In reviewing a trial court's grant of summary judgment, we apply the same standard a trial court is required to apply in the first instance. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122.

■ The parties have all acknowledged that Mrs. Hallett was an invitee on defendants' premises. An owner of premises has a duty of ordinary care for the safety of invitees. *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167, 502 N.E.2d 611, 613. That duty of ordinary care requires owners to keep their premises in a reasonably safe condition and to warn of any hidden dangers of which they have or should have knowledge. *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 26 O.O. 161, 49 N.E.2d 925. "The basis of liability in such a case is the owner's superior knowledge of existing dangers or perils to persons going upon the property." *Englehardt v. Phillipps* (1939), 136 Ohio St. 73, 78, 15 O.O. 581, 583, 23 N.E.2d 829, 831. Viewing the evidence in this case in a light most favorable to the nonmoving parties, there was evidence before the trial court from which a jury could find defendants liable.

Defendants knew people were frequently on the hillside where Mrs. Hallett fell, both because people watched football games from the hillside and also because people accessed the bleachers directly from the hillside. Deposition of Donald Wilcox at 16; deposition of Willis Walker at 13. The area of the hillside where the hole in which Mrs. Hallett stepped was located appeared as "it normally does as it's existed for several years." Deposition of Donald Wilcox at

28. The grass on the hillside is mowed two to three times a year and litter is picked up from the hillsides after each varsity event held at the stadium. Deposition of Donald Wilcox at 8 and 11. Defendants' maintenance employees are instructed to visually inspect the premises for hazards as they pick up litter. Deposition of Donald Wilcox at 33. The hole into which Mrs. Hallett stepped was three to four inches deep and large enough that "you [could] get a foot in it." Deposition of Doran Hallett at 21. If a hole that size were discovered, it would be repaired because it would be considered dangerous. Deposition of Donald Wilcox at 22. At the time Mrs. Hallett stepped into the hole, it was obstructed by overgrown grass. Deposition of Nancy Hallett at 69.

There was evidence before the trial court from which a jury could conclude that defendants knew, or should have known, of the hole and negligently failed to repair it or warn of its existence. Accordingly, the trial court erred in finding that there were no material issues of fact and defendants were entitled to judgment as a matter of law. Plaintiffs' second assignment of error is sustained.

### III

Plaintiffs' assignments of error are sustained. This matter is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

COOK, P.J., and QUILLIN, J., concur.